# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU, | ) ) ) | |
| Petitioner, | ) ) | Civil Action No. 17-1502 |
| v. | ) ) | Judge Cathy Bissoon |
| HEARTLAND CAMPUS SOLUTIONS, ESCI, | ) ) ) | |
| Respondent. | ) | |

## **MEMORANDUM AND ORDER**

### I. MEMORANDUM

Pending before the Court is a Petition to Enforce Civil Investigative Demand filed by Petitioner Consumer Financial Protection Bureau ("CFPB" or "Bureau") (**Doc. 1**). For the reasons that follow, the CFPB's Petition will be GRANTED.

### A. BACKGROUND

On November 16, 2017, the CFPB filed a Petition to Enforce Civil Investigative Demand against Respondent Heartland Campus Solutions, ECSI ("Respondent"). (Doc. 1). In that Petition, the CFPB stated that it issued a Civil Investigative Demand to Respondent on May 18, 2017 ("May 8 CID"). (Id. ¶ 1). The May 18 CID required Respondent to produce documents and respond to interrogatories by June 19, 2017. (Id.) On May 24, 2017, pursuant to the CFPB's rules, Respondent met and conferred with CFPB investigators, during which time Respondent objected to the Notification of Purpose in the May 18 CID, stating that it did not comply with 12 U.S.C. § 5562(c)(2). (Id. ¶ 2).

On June 9, 2018, the CFPB withdrew the May 18 CID and issued a new CID to Respondent ("June 9 CID"). (Id. ¶ 3). The June 9 CID contained a modified Notification of Purpose. (Id.). The modified Notification of Purpose states:

> The purpose of this investigation is to determine whether a student-loan servicers or other persons, in connection with servicing of student loans, including processing payments, charging fees, transferring loans, maintaining accounts, and credit reporting, have engaged in unfair, deceptive or abusive acts or practices in violation of §§ 1031 and 1036 of the Consumer Financial Protection Act of 2010, 12 U.S.C. §§ 5531, 5536; or have engaged in conduct that violates the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, et seq., and its implementing Regulation V, 12 C.F.R. Part 1022. The purpose of this investigation is also to determine whether Bureau action to obtain legal or equitable relief would be in the public interest.

(Folks Decl., Ex. 3 (Doc. 1-4) at 1)

Following Respondent's receipt of the June 9 CID, the parties once against met and conferred on June 19, 2017. (Doc. 1 ¶ 4). Following that meeting, on June 30, 2017, the CFPB issued Respondent a letter modifying and clarifying certain interrogatories and document requests. (Id.).

On June 30, 2017, Respondent filed a petition to set aside or modify the June 9 CID. (Id. ¶ 5). The CFPB denied that petition on September 8, 2017, and served the order on Respondent on September 13, 2017. (Id.). The CFPB's order directed Respondent to comply with the June 9 CID within 10 calendar days. (Id.). Respondent failed to respond to the June 9 CID within that period of time. (Id. ¶ 6). Accordingly, the CFPB filed the instant Petition with this Court pursuant to 12 U.S.C. § 5562(e)(1). In support of its Petition, the CFPB attached the Declaration of Kelly Folks, an enforcement attorney for the CFPB and counsel of record in this case. (Id. ¶ 7; Folks Decl. (Doc. 1-6)).

On November 27, 2017, this Court issued an Order to show cause as to why it should not compel Respondent to comply with the CFPB's June 9 CID. (Doc. 9). The Court's November

27 Order set forth deadlines for Respondent to Answer the Petition and scheduled a show cause hearing for February 5, 2018. (Id.). On December 6, 2017, the parties filed a Joint Motion for Extension of Time, which the Court granted, setting new answer and briefing deadlines and rescheduling the show cause hearing for February 26, 2018. (Docs. 17 & 18).

On January 12, 2018, Respondent filed its Answer and Opposition to the Petition to Enforce the June 9 CID (Docs. 19 & 20), and, on January 17, filed errata to those documents to include the proper signature of counsel (Docs. 23 & 24). In its Opposition, Respondent argues that the June 9 CID is invalid because its statutorily-mandated Notification of Purpose does not comply with the notice requirements of 12 U.S.C. § 5562(c)(2), and relevant case law. (Doc. 24 at 1). Respondent relies almost exclusively on the D.C. Circuit's recent decision Consumer Fin. Prot. Bureau v. Accrediting Council for Indep. Colls. & Schs., 854 F.3d 683 (D.C. Cir. 2017) (ACICS). (See generally id.). In that case, the D.C. Circuit declined to enforce a CFPB CID that was directed to "any entity or person . . . engaged . . . or [] engaging in unlawful acts and practices in connection with accrediting for-profit colleges" in violation of sections 1031 and 1036 of the Consumer Financial Protection Act of 2010 or any other federal consumer financial protection law, concluding that, "as written, the Notification of Purpose fails to state adequately the unlawful conduct under investigation or the applicable law." 854 F.3d at 686, 690. Respondent argues that the Notification of Purpose in this case is "substantially similar" to the one found to be inadequate in ACICS, and "fails to provide [Respondent] 'with fair notice as to the nature of the Bureau's investigation.'" (Doc. 24 at 1-2). Specifically, Respondent argues that the June 9 CID's list of five activities under investigation—*i.e.*, processing payments, charging fees, transferring loans, maintaining accounts, and credit reporting—fails to provide sufficient notice to Respondent because it "merely categorize[s] all aspects of a student loan

servicing operation." (Doc. 24 at 6). Respondent asserts that, because the CFPB has not provided Respondent with fair notice of its investigation, it cannot meet its burden under United States v. Morton Salt Co., 338 U.S. 632, 652 (1950) and Univ. of Med & Dentistry of N.J. v Corrigan, 347 F.3d 57, 64 (3d Cir. 2003). (Doc. 24 at 13-15). Accordingly, Respondent asks that the Court deny CFBP's Petition to enforce the June 9 CID. (Doc. 24 at 15).

On February 2, 2018, the CFPB filed a Reply to Respondent's Answer and Opposition. (Doc. 26). In its Reply, the CFPB argues that the Notification of Purpose in the June 9 CID meets the statutory requirements and "adequately informed Respondent of the purpose and focus of the Bureau's investigation." (Doc. 26 at 9). The CFPB also argues that the ACICS decision is distinguishable from this case, for two reasons. First, the CFPB asserts that the CID in ACICS did not describe the conduct under investigation, whereas the CID in this case states that the investigation concerns student loan servicing conduct, "including processing payments, charging fees, transferring loans, maintaining accounts, and credit reporting." (Id. at 7). Second, the CFPB explains that the ACICS decision involved a CID sent to a non-profit educational accrediting organization, and that the ACICS Court noted that the CFPB has no statutory authority to investigate accreditation. (Id.). In contrast, the CFPB argues, this case involves student loan servicing, which clearly falls within the CFPB's statutory authority. (Id.). The CFPB also notes that, following the ACICS decision, two district courts have upheld CIDs with similar language to the one at issue in this case. (Id. at 7-9 (citing Consumer Fin. Prot. Bureau v. Source for Pub. Data, LP, No. 3:17-MC-16-G-BN, 2017 WL 2443135 (N.D. Tex. June 6, 2017) and Consumer Fin. Prot. Bureau v. Seila Law, LLC, No. 8:17-CV-01081, 2017 WL 6536586 (C.D. Cal. Aug. 25, 2017)).

The Court held a Show Cause hearing on February 26, 2018. (Doc. 27). At that hearing, counsel for Respondent acknowledged that the CFPB has authority to investigate potential violations of federal consumer financial protection laws by student loan servicers. Nevertheless, counsel reiterated Respondent's position that the Notification of Purpose in the June 9 CID is infirm because, in Respondent's view, it fails to provide fair notice of what the CFPB is investigating. Counsel again argued that the clause in the CID stating that the CFPB is investigating potential violations connected to "processing payments, charging fees, transferring loans, maintaining accounts, and credit reporting" fails to provide fair notice because, taken together, the conduct listed defines the entirety of Respondent's business operations. Counsel conceded, however, that had the CFPB notified Respondent that it was investigating just one of the five activities listed— the "charging of fees," for example—the CID would have provided sufficient notice to satisfy the statutory requirement. Following the Show Cause hearing, the Court took the matter under advisement.

**B. ANALYSIS**

In the ACICS decision, the United States Court of Appeals for the D.C. Circuit summarized the statutory background of a petition by the CFPB to enforce a CID as follows:

> Congress enacted the Dodd-Frank Wall Street Reform and Consumer Protection Act ("Dodd-Frank Act") in the wake of the financial crisis of 2008 and 2009. State Nat'l Bank of Big Spring v. Lew, 795 F.3d 48, 51 (D.C. Cir. 2015) (citing Pub. L. No. 111-203, 124 Stat. 1376 (2010)). Title X of the Dodd-Frank Act—the Consumer Financial Protection Act ("CFPA")—established the Consumer Financial Protection Bureau to "regulate the offering and provision of consumer financial products or services under the Federal consumer financial laws," 12 U.S.C. § 5491(a), and "to implement and ... enforce Federal consumer financial law," id. § 5511(a); see also id. §§ 5492(a), 5511(b)-(c). The "Federal consumer financial law" that the CFPB enforces includes the CFPA and eighteen pre-existing consumer protection statutes. Id. § 5481(12), (14); Morgan Drexen, Inc. v. CFPB, 785 F.3d 684, 686–87 (D.C. Cir. 2015). Relevant to our analysis, the CFPA prohibits "unfair, deceptive, or abusive act [s] or practice[s] under Federal law in connection with any transaction with a consumer for a consumer financial

product or service, or the offering of a consumer financial product or service." 12 U.S.C. § 5531(a); see also id. § 5536(a)(1)(B). "Consumer financial product[s] or service[s]" include consumer loans and debt collection activities. See id. § 5481(5), (15).

The CFPA vests the Bureau with broad "rulemaking, supervisory, investigatory, adjudicatory, and enforcement authority . . . " Morgan Drexen, 785 F.3d at 687 (citing 12 U.S.C. §§ 5512(b), 5514-5516, 5562-5564). One of the CFPB's "primary functions" is to "supervis[e] covered persons for compliance with Federal consumer financial law, and tak[e] appropriate enforcement action to address violations of Federal consumer financial law[.]" 12 U.S.C. § 5511(c)(4). Pursuant to its investigative authority, the Bureau may issue CIDs requiring the production of documents and oral testimony from "any person" that it believes may be in possession of "any documentary material or tangible things, or may have any information, relevant to a violation" of the laws that the Bureau enforces. Id. § 5562(c)(1); see also 12 C.F.R. § 1080.6. CIDs allow the Bureau to investigate and collect information "before the institution of any proceedings." 12 U.S.C. § 5562(c)(1). Each CID must "state the nature of the conduct constituting the alleged violation which is under investigation and the provision of law applicable to such violation." Id. § 5562(c)(2); see also 12 C.F.R. § 1080.5. Because "CIDs are not self-enforcing," John Doe Co. v. CFPB, 849 F.3d 1129, 1131 (D.C. Cir. 2017), the CFPB must file a petition in federal court to enforce a CID if a recipient refuses to comply, 12 U.S.C. § 5562(e)(1).

ACICS, 854 F.3d 683, 687-88 (D.C. Cir. 2017).

As discussed above, Respondent's primary argument is that the Notification of Purpose in the June 9 CID fails to satisfy 12 U.S.C. § 5562(c)(2) and its implementing regulation. Again, Section 5562(c)(2) mandates that each CID "state the nature of the conduct constituting the alleged violation which is under investigation and the provision of law applicable to such violation." 12 U.S.C. § 5562(c)(2). The CFPB's implementing regulation likewise provides that a subpoenaed person "shall be advised of the nature of the conduct constituting the alleged violation that is under investigation and the provisions of law applicable to such violation." 12 C.F.R. § 1080.5. "Because the validity of a CID is measured by the purposes stated in the notification of purpose, the adequacy of the notification of purpose is an important statutory requirement." ACICS, 854 F.3d at 690 (citation omitted). "Yet, like every other administrative

6

agency, the CFPB can define the contours of its investigation 'quite generally' while still complying with its statutory obligations." Seila Law, 2017 WL 6536586, at *3 (citing FTC v. Invention Submission Corp., 965 F.2d 1086, 1088, 1090 (D.C. Cir. 1992), FTC v. Carter, 636 F.2d 781, 784, 787–89 (D.C. Cir. 1980), and FTC v. Texaco, Inc., 555 F.2d 862, 868, 874 & n. 26 (D.C. Cir. 1977)).

Applying the above legal standards, the Court finds that the June 9 CID satisfies Section 5562(c)(2)'s statutory notice requirement. Specifically, the June 9 CID notifies Respondent both of the "nature of the conduct" under investigation—potential violations of law connected to student loan servicing, including "processing payments, charging fees, transferring loans, maintaining accounts, and credit reporting"—and the applicable provisions of law—the Consumer Financial Protection Act and the Fair Credit Reporting Act. See 12 U.S.C. § 5562(c)(2). Respondent's argument that the CID's list of activities under investigation—*i.e.*, processing payments, charging fees, transferring loans, maintaining accounts, and credit reporting—fails to provide Respondent with fair notice because it encompasses all aspects of a student loan servicer's operations is a "red herring." See Doc. 24 at 6. Respondent cites to no authority—and the Court finds none—holding that the CFPB is barred from investigating the totality of a company's business operations, rather than a mere subset of its operations, when it has a legitimate reason to believe that violations have occurred. To the contrary, Respondent acknowledged at the Show Cause hearing that the CFPB has broad authority to investigate potential violations of federal consumer financial protection laws. Furthermore, Respondent conceded that, had the CFPB issued a CID notifying Respondent that it was investigating one of the five activities listed in the June 9 CID (specifically, the "charging of fees"), it would have met the statutory requirements. The Court sees no reason why, if the CFPB has the authority to

7

investigate each of the discrete activities listed in the June 9 CID and a legitimate basis to believe that violations related to those activities occurred, it would be required to issue five separate CIDs, rather than a single CID, as it did in this case.[1]

Likewise, the Court disagrees with Respondent that the Notification of Purpose in this case is "substantially similar" to the one in ACICS. As noted, in ACICS, the Bureau issued a CID that was directed to "any entity or person . . . engaged . . . or [] engaging in unlawful acts and practices in connection with accrediting for-profit colleges, in violation of sections 1031 and 1036 of the Consumer Financial Protection Act [] or any other Federal consumer financial protection law." ACICS, 854 F.3d at 686. The June 9 CID clearly is distinguishable. First, unlike the CID in ACICS, the June 9 CID specifies the individuals and entities under investigation ("student loan servicers"), the types of activities under investigation ("processing payments, charging fees, transferring loans, maintaining accounts, and credit reporting"), and two relevant statutes (the Consumer Financial Protection Act and the Fair Credit Reporting Act). The June 9 CID does not include a "catch-all" provision relating to potential violations of "any other Federal consumer financial law."[2] Furthermore, whereas, in ACICS, the D.C. Circuit noted the Bureau's "recognition that it lacks statutory authority over the accreditation process of for-profit colleges," 854 F.3d at 691, here, as Respondent acknowledged at the Show Cause hearing, the CFPB has broad statutory authority to investigate student lending practices. For

---

[1] The Court acknowledges that Respondent has indicated that it believes that the phrase "maintaining accounts" may be vague. Given the context here, the Court disagrees. Moreover, it is difficult to understand how Respondent can, in one breath, take the position that "maintaining accounts" is a component of what Petitioner does, and in the other, indicate that it does not understand to what this phrase refers.

[2] The Court notes that, in its Opposition to the CFPB's Petition, Respondent mischaracterizes the Notification of Purpose contained in the June 9 CID to state that it does include such a "catch-all" provision. See Doc. 24 at 6.

8

these reasons, the Court finds that the Notification of Purpose in the June 9 CID meets Section 5562(c)(2)'s statutory requirements.

The Court also finds that, contrary to Respondent's arguments, the CFPB has met its burden under United States v. Morton Salt Co., 338 U.S. 632 (1950) and Univ. of Med & Dentistry of N.J. v Corrigan, 347 F.3d 57 (3d Cir. 2003). In Corrigan, the Court of Appeals for the Third Circuit held, that to enforce an administrative subpoena such as a CID, an agency must show that (1) its "investigation will be conducted pursuant to a legitimate purpose"; (2) "the inquiry is relevant"; (3) "the information demanded is not already within the agency's possession, and that the administrative steps required by the statute have been followed"; and (4) "[t]he demand for information must not be unreasonably broad or burdensome." Corrigan, 347 F.3d at 64. The June 9 CID meets all four Corrigan requirements.

First, the June 9 CID's legitimate purpose is clear on its face—that is, to investigate whether student loan servicers or others committed unfair, deceptive, or abusive acts or practices, in violation of the Consumer Financial Protection Act, or violated the Fair Credit Reporting Act and its implementing regulation, by their actions in connection with the servicing of student loans. Once again, Section 5562(c)(1) authorizes the Bureau to issue CIDs to "any person" who "may be in possession, custody, or control of any documentary material or tangible things, or may have any information, relevant to a violation" of federal consumer financial law. 12 U.S.C. § 5562(c)(1). Because the CFPB has the authority to investigate potential violations of both the Consumer Financial Protection Act and the Fair Credit Reporting Act, its purpose in issuing the June 9 CID is presumptively legitimate.

Second, the information requested in the June 9 CID appears to be relevant to the CFPB's investigation. As the CFPB argues, at a pre-complaint stage, "an investigating agency is under

9

no obligation to propound a narrowly focused theory of a possible future case." FTC v. Texaco, Inc., 555 F.2d 862, 874 (D.C. Cir. 1977) (*en banc*). "Accordingly, the relevance of the agency's subpoena requests may be measured only against the general purposes of its investigation." Id. Here, all requests appear to be related to Respondent's student loan servicing, and thus are relevant to the CFPB's stated investigatory purpose.

Third, there is no basis for the Court to find that the information demanded is already within the agency's possession or that the CFPB failed to abide by each administrative step that the regulations require (see Doc. 1-6 ¶¶ 4-13), as Respondent makes no argument to that effect.

Finally, the Court notes that Respondent does not argue that the information requested in the June 9 CID is unreasonably broad or burdensome, only that the Notification of Purpose is inadequate. However, as discussed above, the Court finds that the Notification of Purpose set out in the June 9 CID is sufficient to provide Respondent with fair notice of the CFPB's investigation.

## II. ORDER

For the reasons stated above, the CFPB's Petition (**Doc. 1**) is GRANTED and the Court hereby ORDERS that Respondent fully comply with the June 9 CID.

IT IS SO ORDERED.


February 28, 2018                                              s/Cathy Bissoon
                                                                                   Cathy Bissoon
                                                                                   United States District Judge

CC (via ECF email notification):

All Counsel of Record